Filed 12/18/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STUEVE BROS. FARMS, LLC et al.,<br><br>   Plaintiffs and Appellants,<br><br>      v.<br><br>BERGER KAHN,<br><br>   Defendant and Respondent. | G047121<br><br>(Super. Ct. No. 30-2010-00411651)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nancy Wieben Stock, Judge. Reversed.

Keobopha Keopong; Barnes Law and Robert E. Barnes for Plaintiffs and Appellants.

Gladstone Michel Weisberg Willner & Sloane and Allen L. Michel for Defendant and Respondent.

The plaintiffs in this lawsuit are the "heirs" (in lay terms) to the Alta Dena Dairy fortune built by the Stueve family. They include a multitude of individuals and entities and a successor trustee of numerous trusts (collectively, the Stueves). The Stueves have sued many parties, including several attorneys and law firms, on a plethora of grounds. The Stueves generally assert that they have been wrongfully deprived of their fortunes through a seemingly endless series of nefarious devices. In short, Attorney Raymond A. Novell, a lifelong friend of the Stueve family, allegedly teamed up with estate planning Attorney Jay Wayne Allen to drain off the family assets through a Pandora's box of actionable wrongs. Over the years, Attorney Allen jumped from one law firm to another, perchance to avoid detection or perhaps because of detection. One of the law firms to which Attorney Allen took his tantalizing book of business was Berger Kahn. If the allegations are to be believed, Berger Kahn turned its back and happily collected fees while allowing Attorney Allen to help himself to its clients' assets.

Berger Kahn filed two demurrers to the second amended complaint, one of which was sustained without leave to amend, as to the trust and entity Stueves, and the other of which was sustained in part with leave to amend and in part without, as to the individual Stueves. In this opinion, we address only the ruling on the demurrer to the second amended complaint as it affects the trust and entity Stueves. We reverse.

We cannot conclude that the Stueves alleged no facts sufficient to state a viable cause of action against Berger Kahn, when they alleged that Attorney Novell, as the original trustee of the trusts, engaged in acts tantamount to breach of trust and that Attorney Allen and Berger Kahn knowingly participated in those acts to their benefit. Furthermore, as stated in our opinion in the companion appeal, Case No. G046253, the court erred in striking all of the Stueves's conspiracy allegations, which formed the primary underpinnings of their fraud and misrepresentation causes of action. It is premature to conclude that the Stueves are unable to allege facts sufficient to state a viable cause of action based on fraud or misrepresentation. Finally, we cannot agree that

2

the statute of limitations bars all causes of action as a matter of law.

I

FACTS

The Stueves filed a 331-page second amended complaint against Attorney Novell, Attorney Allen, Berger Kahn, and dozens of others. The Stueves described therein a spider web of nefarious transactions so thick as to block out the sun, and detailed how the defendants purportedly drained $25 million off the composite family estate. The eleven causes of action against Berger Kahn included fraud by intentional misrepresentation, negligent misrepresentation, fraud by concealment, constructive fraud, breach of fiduciary duty, conversion, professional negligence, negligent hiring and retention, violation of the prudent investor rule, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.), and financial elder abuse.

Berger Kahn filed a motion to strike and a demurrer to the second amended complaint. The court granted, in part, Berger Kahn's motion to strike all conspiracy allegations against it, due to the Stueves's failure to comply with Civil Code section 1714.10. It also sustained Berger Kahn's demurrer, without leave to amend, as to the claims of the trust and entity Stueves. An order of dismissal of Berger Kahn was filed with respect to the trust and entity Stueves.

Appeals were taken from the order granting the motion to strike and from the order of dismissal. This opinion addresses only the appeal from the order of dismissal. The appeal from the ruling on the motion to strike is at issue in companion Case No. G046253.

II

DISCUSSION

A. *Standard of Review:*

"The standard of review on an appeal from judgment of dismissal following sustaining of a general demurrer is guided by long settled rules. We treat the demurrer as

3

admitting all material facts properly pleaded, as well as those which reasonably arise by implication, but not contentions, deductions or conclusions of fact or law. [Citations.] 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action on any theory. [Citations.] Moreover, '"the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties."' [Citations.] A demurrer challenges only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations. [Citation.]" (*Yue v. City of Auburn* (1992) 3 Cal.App.4th 751, 756-757.) Consequently, "[t]he reviewing court assumes the truth of the allegations in the complaint that have been properly pleaded . . . . [Citations.]" (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 690.)


*B. Allegations of Second Amended Complaint:*

The allegations of the second amended complaint include the following:

Brothers Harold, Edgar and Elmer Stueve founded the Alta Dena Dairy in 1945. Attorney Novell was a friend of the Stueve family since 1947. He became legal counsel for the Stueve family in the 1990's.

In 2001, Attorney Novell teamed up with Attorney Allen and devised a complex plan to defraud the Stueves. They convinced the Stueves that their fortunes would be eaten up by taxes unless they set up a multitude of trusts. Attorney Allen then drafted the trusts and the Stueves's assets were transferred to Attorney Novell as trustee. The trusts were drafted so as to provide Attorney Novell, as trustee, with the discretion to do whatever he chose with the assets, thereby giving the defendants the means to liquidate the assets for their own benefit. In practice, Attorneys Novell and Allen used the trust assets to engage in business transactions benefitting themselves, and thereby

4

obtained undisclosed profits, and they also transferred trust assets to entities they owned or controlled.

To facilitate the plan, various non-trust entities were also established beginning in 2001. Attorneys Allen and Novell became the attorneys for these entities and Attorney Novell became their manager. Through the use of these entities, together with the trusts, Attorneys Novell and Allen operated a Ponzi scheme based on money laundering activities and the issuance of sham loans. Stueve monies were loaned to various entities, and the loans were repaid, if at all, with other monies also taken from the Stueves.

From February 1, 2006 through June 2007, Attorney Allen was employed by, and was an agent of, Berger Khan. While he was at that firm, Attorney Allen provided legal representation to all of the Stueves except Michael Meyer and SBF Delano. The actions of Berger Kahn were taken by and through Attorney Allen as its partner, attorney and employee, and Attorney Allen had actual and/or ostensible authority to act on behalf of Berger Kahn.

Berger Kahn undertook the representation of the Stueves in February 2006, when Attorney Allen joined the firm. Soon afterward, Berger Kahn acquired actual or constructive knowledge that serious allegations of misconduct had been leveled at Attorney Allen previously and that three lawsuits had been filed against him. An attorney who testified in one of those lawsuits specifically told Berger Kahn managers not to keep Attorney Allen, because it was "too risky" to do so. Berger Kahn failed to inform its clients of the allegations against Attorney Allen.

In April 2006, Attorney Allen, as president of a limited liability company, took out a $400,000 loan from SBF Partners, GP—which was his client and was owned by certain of the Stueve trusts, which were also his clients. He did not disclose this loan to the Stueves either in their individual capacities or as owners of beneficial interests in the trusts and SBF Partners, GP. A title company satisfied the note in October 2006. In

5

January 2007, Attorney Allen borrowed $425,000 from SBF Partners, GP, due and payable in June 2007. The loan was secured by property in Anaheim, California. Shortly after he borrowed the money, Attorney Allen transferred title to the security to his wife as her sole and separate property. He defaulted on the loan on June 30, 2007.

Also while at Burger Kahn, Attorney Allen conspired with Attorney Novell and other defendants to further defraud the Stueves of hundreds of thousands of dollars or more via a series of transactions effectuated through a 12- to 17-step plan. To facilitate the plan, in December 2006, Attorney Allen formed an entity known as GSF Acquisitions Inc., of which he was chief executive officer, chief financial officer, and treasurer. He also formed Clarke-Novell LLC, in December 2006, and Firma Funding LLC, in June 2007. These three entities were among those formed as vehicles to siphon off Stueve assets. In addition, Attorney Allen prepared promissory notes, loan purchase agreements, loan assignments and other documents used to effectuate the plan. Furthermore, Attorney Allen and Berger Kahn participated in mail and wire fraud.

In furtherance of the Ponzi scheme, Attorneys Novell and Allen and Berger Kahn intentionally concealed both the nature of the transactions and the conflicts of interest, with the intention that the Stueves rely upon the concealments and omissions. Attorneys Novell and Allen and Berger Kahn, on various occasions, advised members of the Stueve family not to disclose information about the estate plan to outsiders for privacy reasons. The Stueves reasonably relied upon the concealments and omissions, with the result that they suffered both financial harm and delay in the discovery of the facts giving rise to their claims.

After June 2007, Attorney Allen left Berger Khan and went to work for Buchalter Nemer. In December 2009, Earl Stueve died and his wife, Kim, asked about life insurance proceeds. Attorney Novell informed her that there was no money in the estate. She became alarmed and contacted Meyer. The nefarious transactions remained undiscovered until January 2010, when Meyer reviewed the documents provided to him.

6

Attorney Novell was removed as trustee of the trusts and Meyer was appointed successor trustee in March 2010, by court order. Only thereafter did the scope and magnitude of the problem come to light. The defendants caused at least $25 million in losses.

*C. Demurrer, Ruling, and Issues Presented:*

Berger Kahn attacked each of the 10 causes of action brought by the trust and entity Stueves. Those causes of action are for fraud by intentional misrepresentation, negligent misrepresentation, fraud by concealment, constructive fraud, breach of fiduciary duty, conversion, professional negligence, negligent hiring and retention, violation of the prudent investor rule, and RICO.

Berger Kahn asserted that the statute of limitations barred each of those causes of action. It also asserted that the trust and entity Stueves had failed to allege facts sufficient to constitute a cause of action and that the allegations were uncertain. (Code Civ. Proc., § 430.10, subds. (e), (f).) Berger Kahn argued, inter alia, that none of the misrepresentation based causes of action would lie because Attorney Novell, as trustee of each Stueve trust and manager of each Stueve entity, could not have been misled by Attorney Allen's representations made in connection with plan that the two of them jointly concocted.

The court sustained the demurrer without leave to amend, holding that the statute of limitations barred all causes of action. It also expressed its agreement with Berger Kahn's position that none of the misrepresentation claims were viable because Attorney Novell could not have been misled by Attorney Allen. In addition, the court noted the cause of action for conversion would not lie because the facts alleged did not constitute conversion. Finally, it concluded no other cause of action would lie because each one was based on the purported fraudulent scheme orchestrated by Attorneys Allen and Novell, which was not actionable.

7

In their opening brief, the trust and entity Stueves argue: (1) the statute of limitations does not bar any of their claims; (2) the misrepresentation claims are sufficiently alleged, but if this court should determine otherwise, then leave to amend should be granted; (3) the conversion cause of action is sufficiently alleged; and (4) the court erred in concluding that each of the remaining causes of action failed as being based on the purported fraudulent scheme orchestrated by Attorneys Allen and Novell. We address these issues in turn.

### D. Statute of Limitations:

#### (1) Code of Civil Procedure section 340.6—

Code of Civil Procedure section 340.6, subdivision (a) provides: "(a) An action against an attorney for a wrongful act or omission, *other than for actual fraud*, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (Italics added.)

"'''[A] demurrer on the ground of the bar of the statute of limitations does not lie where the complaint merely shows that the action may have been barred. It must appear affirmatively that, upon the facts stated, the right of action is necessarily barred.'"

8

[Citations.]' [Citations.]" (*Baright v. Willis* (1984) 151 Cal.App.3d 303, 311.)

*(2) Four-year outside limitations period—*

We address the four-year outside limitations period first. The Stueves contend their initial complaint was filed within four years of the occurrence of Berger Kahn's wrongdoings, so their causes of action are not barred by the four-year limitations period. They emphasize that the statute of limitations did not begin to run when the trusts were set up in 2001, which was before they were harmed through the diversion of assets.

Moreover, in their second amended complaint, they alleged that Berger Kahn committed particular misdeeds in 2006 and 2007. For example, the Stueves alleged that Attorney Allen engaged in the following wrongdoings while at Berger Kahn: (1) the formation of Clarke-Novell LLC and GSF Acquisitions Inc. in December 2006 to siphon off assets; (2) the formation of Firma Funding LLC in 2007 to divert assets; (3) the borrowing of $400,000 or more, from companies owned by the Stueves, in April 2006 and again in January 2007; and (4) the preparation and effectuation of a 12- to 17-step plan to divert assets through a series of promissory notes, loan purchase agreements, loan assignments and other documents. Furthermore, the Stueves alleged that Attorney Allen made false representations at meetings with the Stueves on February 28, 2006 and February 24, 2007.

Although the record on appeal does not contain a copy of the original complaint, the parties agree that the complaint was filed on September 24, 2010. It is simple to see that, at a minimum, the statute of limitations did not begin to run as to against Berger Kahn in 2001, before the firm entered the picture, and that the four-year outside limitations period did not bar all claims, inasmuch as many of the alleged wrongdoings took place within four years of the filing of the initial complaint. It is not necessarily the case, however, that every alleged wrong was committed within four years of the filing of the lawsuit. This being the case, we turn to the tolling issues.

9

*(3) Tolling during continued representation—*

"Under California law, the statute of limitations for attorney malpractice claims arising from a given matter is tolled for the duration of the attorney's representation of the client in that matter. (Code Civ. Proc., § 340.6, subd. (a)(2).)" (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 505.) Berger Kahn, relying upon *Beal Bank,* says that Code of Civil Procedure section 340.6, subdivision (a)(2) did not continue to toll the statute of limitations after Attorney Allen left the firm. Berger Kahn is correct.

The Supreme Court in *Beal Bank, SSB v. Arter & Hadden, LLP*, *supra*, 42 Cal.4th 503, in analyzing Code of Civil Procedure section 340.6, subdivision (a)(2), made clear that "[w]hen an attorney leaves a firm and takes a client with him or her, . . . the tolling in ongoing matters [does not] continue for claims against the former firm and partners[.]" (*Beal Bank, SSB v. Arter & Hadden, LLP*, *supra*, 42 Cal.4th at p. 505.) It further stated that "an action against a law firm is tolled so long as *that firm* continues representation, just as an action against an attorney is tolled so long as *that attorney* continues representation, but representation by one attorney or firm does not toll claims that may exist against a different, unaffiliated attorney or firm." (*Id.* at p. 509.) As applied to the facts before us, this means the statute of limitations against Berger Kahn was tolled under subdivision (a)(2) only until Attorney Allen left the firm at the end of June 2007.

*(4) Tolling during willful concealment—*

The Stueves contend that the running of the Code of Civil Procedure section 340.6 statute of limitations was also tolled under subdivision (a)(3) thereof (applicable only to the four-year outside limitations period), because of willful concealment by Attorney Allen and Berger Kahn. Berger Kahn, however, maintains that any tolling period cannot have lasted longer under subdivision (a)(3) than under subdivision (a)(2). In other words, it asserts, for both factual and legal reasons, that even

10

if the running of the statute of limitations had been tolled due to fraudulent concealment, the period of the tolling would have ended no later than the date Attorney Allen left the firm.

This is a matter we need not resolve. Because the four-year limitations period was tolled under Code of Civil Procedure section 340.6, subdivision (a)(2) until the date Attorney Allen left Berger Kahn, and the lawsuit was filed within four years of that date, the causes of action to which section 340.6 applies were timely under its four-year limitations period, unless its one-year limitations period expired sooner. That is a matter that will need to be determined on remand, as we discuss below.

*(5) One-year limitations period—*

Code of Civil Procedure "section 340.6(a) makes the plaintiff's actual or constructive discovery of the defendant's wrongdoing an element of its one-year-from-discovery limitations defense, it does *not*—nor does any other law—make the plaintiff's actual or constructive discovery of the defendant's wrongdoing an element of a prima facie claim for attorney malpractice. [Citations.]" (*Samuels v. Mix* (1999) 22 Cal.4th 1, 8.) Put another way, "defendant, if he is to avail himself of the statute's one-year-from-discovery limitation defense, has the burden of proving, under the 'traditional allocation of the burden of proof' [citations], that plaintiff discovered or should have discovered the facts alleged to constitute defendant's wrongdoing more than one year prior to filing [the] action." (*Id.* at pp. 8-9.)

Furthermore, "'"[t]he question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is essentially a *question of fact* . . . [and] [i]t is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law." [Citations.]' [Citations.] Further, 'where there is a professional relationship, the degree of diligence in ferreting out the negligence for the purpose of the statute of limitations is diminished. [Citation.]' [Citations.]" (*Baright v. Willis*, *supra*, 151 Cal.App.3d at p. 311.)

11

*(a) Knowledge of Buchalter Nemer*

Berger Kahn contends that upon Attorney Allen's hiring by Buchalter Nemer in July 2007, the Stueves knew or should have known of the facts constituting Berger Kahn's allegedly wrongful acts or omissions. As a corollary, Berger Kahn argues the one-year statute of limitations ran in July 2008, more than two years before the Stueves filed their original complaint.

In fashioning this argument, Berger Kahn first says that Buchalter Nemer's knowledge should be imputed to the Stueves. Berger Kahn cites *Laukkare v. Abramson* (1935) 9 Cal.App.2d 447, which states it is well established "that [the] knowledge of an agent is imputed to his principal and also that the knowledge of an attorney is imputed to his clients." (*Id.* at p. 449.) However, in none of the cases Berger Kahn cites was the attorney's knowledge that he had wronged his client imputed to his law firm and reimputed to the client. Rather, in those cases, the attorney's knowledge was imputed to the client where the actions of an unaffiliated third party gave rise to a cause of action on behalf of the client. (See *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223 [attorney's knowledge of title company's misconduct imputed to client]; *Laukkare v. Abramson*, *supra*, 9 Cal.App.2d 447 [attorney's knowledge of rejected creditor's claim imputed to client].)

Moreover, where a malevolent agent's actions are hostile to his principal, we neither presume that the agent will disclose those actions to his principal nor impute the agent's knowledge of his own misdeeds to his principal. (*Witty v. Clinch* (1929) 207 Cal. 779, 782-783.) Applying the same logic, we see no reason to impute Attorney Allen's knowledge of the misdeeds of himself/Berger Kahn to Buchalter Nemer as the new agent of the Stueves any more than we would impute that knowledge directly to the Stueves.

Furthermore, the double imputation rule Berger Kahn suggests would eviscerate the Code of Civil Procedure section 340.6 "knew or should have known" rule.

12

In other words, in every case where the client had no actual knowledge of the attorney's misdeeds, the own attorney's knowledge would be imputed first from himself or herself to the law firm and second from the law firm to the client, such that in all events it would be said that the client "should have known" what his or her malfeasant attorney knew. Were that the correct application of the rule, the Legislature might as well have said that the one-year statute of limitation begins to run from the date the attorney commits the misdeed, whether the client has actual knowledge or not, at least in every case in which the attorney is not a sole practitioner. Clearly, this is not what the Legislature intended. (See *Baright v. Willis*, *supra*, 151 Cal.App.3d at p. 310, fn. 2 [not the case that plaintiff should have known about malpractice cause of action just because he asked a second attorney about his rights].)

On a different point, Berger Kahn says the Stueves are bound by their own judicial admissions to the effect that Buchalter Nemer had actual and constructive knowledge of Attorney Allen's wronging. Berger Kahn cites three provisions of the second amended complaint in support of its position.

It cites the portion of the second amended complaint wherein the Stueves say Attorney Allen became affiliated with Buchalter Nemer in July 2007 and that "Buchalter, by and through its attorney employee Allen, conspired and agreed to conspire or lent material support in conjunction with Novell to defraud the Stueves and Stueve Estate. Additionally, Buchalter knew or should have known Allen was engaged in a scheme to defraud the Stueves. Buchalter employed a team of professionals including employees Anne Danley and George Kunzelman who had independent knowledge and assisted Allen and Buchalter in this scheme." These allegations do not state, however, that Buchalter Nemer or its employees knew or should have known that Attorney Allen conspired with Attorney Novell to defraud the Stueves during the time that Attorney Allen was affiliated with Berger Kahn.

13

Berger Kahn also cites a portion of the second amended complaint wherein the Stueves allege that Buchalter Nemer was liable for the negligent hiring, supervision and retention of Attorney Allen because Buchalter Nemer knew or through the exercise of reasonable diligence should have known that Attorney Allen lacked integrity, honesty and/or competence because lawsuits against Attorney Allen were a matter of public record, such that Buchalter Nemer was on constructive notice.

However, the cases Berger Kahn cites do not stand for the proposition that when a law firm is alleged to have constructive notice that an attorney in its employ has been sued previously, this constructive knowledge should be imputed to the client such that it can be said the client knew or should have known the attorney had committed a wrong against him or her. If anything, the client would only be deemed to have the same constructive notice as the law firm—notice that the attorney was alleged to have wronged someone else—not notice that the attorney had wronged the client.

Finally, Berger Kahn insists that, because the Stueves alleged that, for the purposes of the negligent hiring cause of action, Buchalter Nemer had constructive notice of lawsuits of record, they concede that with reasonable diligence they themselves could have discovered the facts upon which their own lawsuit was based. We must disagree. Even assuming the prior lawsuits against Attorney Allen were matters of public record that should have been discovered by Buchalter Nemer (a matter we do *not* decide), the Stueves only allege this means the law firm should have known he was lacking in integrity and should not have hired him. It does not follow from this allegation that the Stueves themselves, as lay persons, should have discovered such lawsuits and also should have known they showed Attorney Allen had wronged both the plaintiffs in those lawsuits and the Stueves themselves as well. Berger Kahn's citation to *Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732 does not convince us otherwise.

14

In any event, there is a difference between alleging facts and propounding legal theories. The Stueves alleged as a matter of fact that there were lawsuits of record before Buchalter Nemer hired Attorney Allen. They are bound by this factual allegation. This does not mean that they are bound by a legal theory that lawsuits of record in the courthouse put all members of the public on constructive notice of their existence (akin to a lis pendens). Although "[t]he admission of fact in a pleading is a 'judicial admission'" (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271), the offering of one legal theory in a pleading does not necessarily preclude the pleader from offering a different legal theory as well (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 657-659).

*(b) Knowledge of Attorney Novell*

"As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. [Citations.]" (*Estate of Bowles*, *supra*, 169 Cal.App.4th at p. 691; Prob. Code, § 16249.) Here, Attorney Novell, as trustee, was the person with the power to bring suit on behalf of the trusts. Berger Kahn says that Attorney Novell knew of the purportedly wrongful acts or omissions of Attorney Allen at the time those acts or omissions were committed. Consequently, Berger Kahn argues, the one-year statute of limitations against it must necessarily have run no later than a year after the tolling period under Code of Civil Procedure section 340.6, subdivision (a)(2) ended—that is, a year after Attorney Allen left the firm. In other words, under Berger Kahn's view, a law firm that engages in a breach of trust together with its client, a trustee, is off the hook if the trustee does not report the mutual wrongdoing to the trust beneficiaries for a year after legal representation ends.

In support of this viewpoint, Berger Kahn cites *Security First Nat. Bank v. Ross* (1963) 214 Cal.App.2d 424. That case is not dispositive. There, the plaintiff/cross-defendant, in his capacity as trustee of his wife's testamentary trust, held title to a one-quarter interest in a piece of property. He, in his individual capacity, acquired the

15

remaining three-quarters interest in the property at a tax sale. (*Id.* at pp. 427-428.) The beneficiaries of the trust filed objections to an accounting and report filed by the plaintiff/cross-defendant in the probate court, in which he stated that he individually owned three-quarters of the property. (*Id.* at pp. 429-430.)

The probate court settled the accounting and report and appointed a new trustee. It also ordered the plaintiff/cross-defendant to turn over the trust assets to the new trustee and file a supplemental accounting and report. The supplemental accounting and report described the trust assets as including the one-quarter interest in the property, but not the other three-quarters interest. The supplemental accounting and report was contested but ultimately approved by the court. (*Security First Nat. Bank v. Ross*, *supra*, 214 Cal.App.2d at p. 430.)

Sometime thereafter, another successor trustee of the trust was appointed—the defendant/cross-complainant. The plaintiff/cross-defendant filed a partition action against him with respect to the three-quarters interest in the property. The defendant/cross-complainant filed a cross-complaint for constructive trust and quiet title, seeking to relitigate the ownership of the three-quarters interest in the trust. (*Security First Nat. Bank v. Ross*, *supra*, 214 Cal.App.2d at pp. 426, 428.)

As a defense, the plaintiff/cross-defendant raised the statute of limitations. The defendant/cross-complainant claimed the statute of limitations for fraud did not begin to run before he personally had any knowledge of the alleged wrongdoing by the plaintiff/cross-defendant. The court responded that the defendant/cross-complainant's predecessor trustee, the trust beneficiaries and the probate court all had knowledge of the facts at least eight years earlier and the statute of limitations was not tolled just because the defendant/cross-complainant was not personally aware of the facts at that time. (*Security First Nat. Bank v. Ross*, *supra*, 214 Cal.App.2d at pp. 429-431.) It further stated that constructive notice of any wrongdoing was given to all interested persons by the nature of the tax sale, the recordation of the tax deeds, and the prior trust proceedings.

16

In addition, it stated that a cause of action for constructive trust due to fraud arises upon acquisition of the property by the wrongdoer.  (*Id.* at pp. 431-432.)

Despite Berger Kahn's entreaty, we do not read too much into the statement of the court in *Security First Nat. Bank v. Ross*, *supra*, 214 Cal.App.2d 424 to the effect that there was no tolling of the statute of limitations while the defendant/cross-complainant was unaware of the facts.  After all, the first successor trustee and the trust beneficiaries had become aware of the facts many years earlier and had had every opportunity to litigate the matter.  (*Id.* at pp. 431-432.)  There was no reason to resurrect a dead statute of limitations just because a second successor trustee entered the picture.  In the matter before us, in contrast, the party seeking to pursue the litigation on behalf of the trusts is the first successor trustee appointed to replace Attorney Novell, not a second successor trustee seeking to relitigate.

More importantly, as the Stueves point out, our Supreme Court has stated that:  "'Since the rule imputing to the principal the knowledge of the agent rests upon the presumption that the agent will communicate his information, the rule is inapplicable where the facts are such that the presumption of communication does not exist, as where the agent, in the particular transaction in question, is acting in an adverse interest to that of his principal.  In such transactions the attitude of the agent is one of hostility to the principal, and it would be absurd to suppose that he would communicate to the principal any facts within his private knowledge affecting the subject of his dealing, unless it would be his duty to do so if he were wholly unconnected with the principal.'"  (*Witty v. Clinch*, *supra*, 207 Cal. at pp. 782-783.)

Clearly, it would be absurd to presume that Attorney Novell would disclose Attorney Allen/Berger Kahn's misdeeds to the Stueves, inasmuch as the disclosure would expose his own wrongdoings as well.  In this context, we do not impute Attorney Novell's knowledge to the Stueves.  (*Witty v. Clinch*, *supra*, 207 Cal. at pp. 782-783.)

17

Berger Kahn's citation to *Sanfran Co. v. Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App.2d 191 does not change our analysis. In that case, a defendant corporation was sued for nondisclosure of the fact that the building located on property it sold to the plaintiff did not comply with building code requirements. (*Id.* at p. 194.) Because the corporate representative who had pulled the building permit was bound to know the contents of the permit and the fact that the building was out of compliance, his knowledge was imputed to the defendant corporation. (*Id.* at pp. 204-205.)

That case is distinguishable from the matter before us. Here, the entities in question, Stueve Brothers Farms, LLC and Stueve Bros. Farms of Delano, LLC, are the plaintiffs who have filed suit against a third party, Berger Kahn. The question is whether the knowledge of their manager, Attorney Novell, about the actions of Attorney Allen/Berger Kahn should be imputed to the plaintiff entities, where the manager Attorney Novell was allegedly conspiring with Attorney Allen/Berger Kahn to deprive the entities of their assets. In this context, *Sanfran Co. v. Rees Blow Pipe Mfg. Co.*, *supra,* 168 Cal.App.2d 191 is inapposite and we follow the viewpoint of *Witty v. Clinch*, *supra*, 207 Cal. 779, that the knowledge of the conniving agent is not imputed to the principal.

### *(c) Reasonable diligence*

Berger Kahn also asserts that the Stueves, through the exercise of reasonable diligence, should have discovered the alleged wrongdoings earlier. It says, for example, that family members Boyd and Noah Clarke had involvement with one of the trusts and Noah Clarke was involved in Clarke-Novell LLC. It also says that Harold and David Stueve were officers and directors of certain entities at issue in the litigation. Similarly, Berger Kahn takes issue with the assertion that the Stueves had no reason to know about any wrongdoings before Earl Stueve died in 2009 and his widow asked about life insurance. It says that other senior Stueves had died earlier and the plaintiffs should have been tipped off then, when no life insurance proceeds were paid.

18

This may turn out to be the case in the end—we don't know. "'"A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear of the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Baright v. Willis*, *supra*, 151 Cal.App.3d at p. 311.)

*(6) Actual fraud—*

Finally, as we recall, the Code of Civil Procedure section 340.6 statute of limitations does not apply to causes of action for actual fraud. "Section 338, subdivision (d) provides for a three-year statute for '[a]n action for relief on the ground of fraud or mistake.' This statute applies to any action for conspiracy based upon fraud. [Citation.]" (*Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1110; see also *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 963.)

The Stueves argue that the three-year Code of Civil Procedure section 338, subdivision (d) statute of limitations applies with respect to their fraud-based causes of action. And, as they correctly observe, that statute provides that a cause of action based on fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." (Code Civ. Proc., § 338, subd. (d).) They contend that they did not discover any of the facts underlying Berger Kahn's fraud until January 2010, the same year that they filed their lawsuit, so their fraud-based causes of action are not time-barred.

Berger Kahn is little concerned with the Code of Civil Procedure section 338, subdivision (d) statute of limitations, because it contends that the Stueves have failed to allege facts sufficient to support a cause of action based on actual fraud. We are not convinced of that failure, however, for reasons we shall discuss below. The Stueves have alleged, at a minimum, that Attorney Allen and thus Berger Kahn conspired with

19

Attorney Novell to commit fraud. Whether the facts will show that the section 338, subdivision (d) limitations period bars the causes of action for actual fraud is a matter to be addressed on remand.

To be clear, however, we note that causes of action for either constructive fraud or negligent misrepresentation are not governed by Code of Civil Procedure section 338, subdivision (d). Rather, those causes of action are governed by Code of Civil Procedure section 340.6. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 69-70.) Only causes of action based on actual fraud are governed by section 338, subdivision (d). This includes, contrary to Berger Kahn's assertion, causes of action based on fraudulent concealment, which "is a species of fraud or deceit. [Citations.]" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868; accord, *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291-294.)

*Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362 is inapposite. That case applied Code of Civil Procedure section 340.6 to a cause of action for breach of fiduciary duty based on the failure to comply with certain California Rules of Professional Conduct concerning the duty to make various disclosures. (*Id.* at pp. 1365-1366, 1369.) This is not the same as a cause of action for fraudulent concealment, which requires an allegation that "the defendant . . . intentionally concealed or suppressed [a] fact with the intent to defraud the plaintiff." (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, *supra*, 162 Cal.App.4th at p. 868.) Where fraudulent concealment is properly alleged, we apply Code of Civil Procedure section 338, subdivision (d). (See *Vega v. Jones, Day, Reavis & Pogue*, *supra*, 121 Cal.App.4th at pp. 292, 298.)

*E. Fraud and Misrepresentation Causes of Action:*

In sustaining the demurrer to the second amended complaint with respect to the trust and entity claims, the court stated that the trustee of the trusts, Attorney Novell, was the only one who had standing to bring a claim on behalf of the trusts and was the

20

only one to whom Attorney Allen could have made any representations. However, Attorney Novell could not maintain an action for fraud or misrepresentation by Attorney Allen/Berger Kahn because he and Attorney Allen allegedly had concocted the scheme together, so he could not logically have been misled by Attorney Allen's representations in furtherance of their common scheme. As the court put it, "[o]ne cannot defraud oneself."

This analysis stops short. The fundamental premise of the lawsuit is that Attorney Novell and Attorney Allen schemed and conspired together, and devised an elaborate plan to siphon off Stueve family assets through a spider web of trusts and other entities. Although the second amended complaint contains some allegations of misrepresentations made by Attorney Allen himself, most of the allegations are that the misrepresentations were made by Attorney Novell. However, just because the Stueves rely primarily on the misrepresentations of Attorney Novell, rather than the misrepresentations of Attorney Allen or anyone else affiliated with Berger Kahn, that does not mean, as Berger Kahn suggests, that they cannot state a viable misrepresentation cause of action on any theory.

To the contrary, we observe that in paragraphs 441, 442, 544 and 545 of the second amended complaint the Stueves variously alleged that Berger Kahn, by and through Attorney Allen, conspired with Attorney Novell and others, and aided and abetted them, in committing fraud against the Stueves. Nothing Berger Kahn says convinces us that the Stueves cannot maintain viable causes of action based on these allegations.

Although they represented Attorney Novell, not the Stueves, Attorney Allen and Berger Kahn nonetheless had a duty not to commit an intentional tort, such as fraud, against the Stueves or anyone else. (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 825-826 [duty not to commit fraud]; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 [duty to refrain

21

from injuring another]; *Fuller v. First Franklin Financial Corp.*, *supra*, 216 Cal.App.4th at p. 967 [duty to refrain from committing intentional tort against anyone].)  "Thus, there can be liability for conspiring to commit an intentional tort even *absent* any duty [other than the general duty to refrain from injuring another].  [Citations.]"  (*Fuller v. First Franklin Financial Corp.*, *supra*, 216 Cal.App.4th at p. 967.)

"Although conspiracy to commit a tort is not a separate cause of action from the tort itself, alleging a conspiracy fastens liability on those who agree to the plan to commit the wrong as well as those who actually carry it out.  [Citation.]  The elements of a civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act done in furtherance of the common design.  [Citation.]"  (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 845-846; accord, *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021-1022.)  "'The major significance of a conspiracy cause of action "lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong . . . regardless of the degree of his activity.  [Citations.]'"  [Citation.]  The essence of the claim is that it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability.  Each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy, and for all damages cause thereby.  [Citations.]"  (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, *supra*, 131 Cal.App.4th at p. 823, fn. omitted.)

"Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. [Citations.]"  (*Saunders v. Superior Court*, *supra*, 27 Cal.App.4th at p. 846; accord, *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144.)  "Despite some

22

conceptual similarities, civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty, differs fundamentally from liability based on conspiracy to commit a tort. [Citations.] '"[A]iding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct."'" (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, *supra*, 131 Cal.App.4th at p. 823, fn. 10.)

As we hold in our opinion in the companion case, Case No. G046253, the court erred in ruling that the Stueves were barred by Civil Code section 1714.10 from maintaining causes of action based on conspiracy. This being the case, on remand, the Stueves shall have every opportunity to press their fraud and misrepresentation causes of action based on conspiracy and aiding and abetting theories.

*F. Other Causes of Action:*

*(1) Conversion—*

The ruling on the demurrer to the second amended complaint states that the conversion cause of action does not lie because the fact that Berger Kahn permitted GSF to have offices in its building does not constitute conversion. While that may be, the second amended complaint alleged a great deal more than that upon which a conversion cause of action could be based. Indeed, it asserted that Berger Kahn "aided and abetted" other identified defendants in their conversion of Stueve assets. As we have already stated, the Stueves shall be permitted to pursue their aiding and abetting claims on remand.

*(2) Remaining claims—*

After stating that the conversion cause of action did not lie, the court further stated that "[t]he other Causes of Action are all based on the alleged fraudulent scheme by Allen and Novell and, as that scheme is not actionable, these Causes of Action are not

23

actionable." We disagree with this conclusion for two reasons. First, as we have stated, the Stueves may pursue their fraud and misrepresentation causes of action based on conspiracy and aiding and abetting theories. Second, not all of the other causes of action were based on fraud or misrepresentation anyway.

The breach of fiduciary duty cause of action is of particular note, inasmuch as it goes to the heart of the case and is supported by substantial case law. In their breach of fiduciary cause of action, the Stueves alleged, inter alia, that Berger Kahn breached its fiduciary duty by conspiring with Attorney Novell and others to misappropriate Stueve money and property. Numerous cases have held that a third party who knowingly assists a trustee in breaching his or her fiduciary duty may, dependent upon the circumstances, be held liable along with that trustee for participating in the breach of trust. (See, e.g., *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093 [attorney liability for participation in trustees' breach of fiduciary duty]; *King v. Johnston* (2009) 178 Cal.App.4th 1488 [third party liability for participation in breach of trust]; *Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030 [attorney liability for participation in breach of trust]; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445 [financial adviser liability for participation in breach of trust].) This being the case, the court in the matter before us erred in concluding that most of the Stueves's causes of action were barred just because they arose out of the scheme jointly concocted by Attorneys Novell and Allen.

To the extent we have failed to touch upon every cause of action, we simply note that it is premature to preclude claims when the Stueves thus far have been limited in their ability to fully state their claims based on conspiracy and aiding and abetting theories.

24

*G.  Conclusion:*

We reject Berger Kahn's assertion that the statute of limitations must necessarily bar each of the Stueves's causes of action.  It is premature to determine the point on appeal because factual issues bearing upon it abound.  We also reject Berger Kahn's argument that the dismissal should be affirmed because the Stueves have not alleged facts sufficient to state a cause of action on any theory.  This is especially so given the Stueves's allegations supporting causes of action based on conspiracy to commit fraud, aiding and abetting fraud, and participation in breach of fiduciary duty/breach of trust.  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 [reverse if plaintiff states viable cause of action under any theory].)

As a final note, we wonder whether some of the difficulties in this lawsuit arise not out of the Stueves's failure to have said enough to support their causes of action, but rather out of their having said too much.  It is challenging, to say the least, to digest 331 pages and catalog the necessary details supporting each legal issue that may be raised.  Nonetheless, after having been chastised for the failure to provide enough detail, the individual Stueves thereafter filed a 497-page third amended complaint.[1]  Be careful what you wish for.  Sometimes more is less.

---

[1]  The ruling on the demurrer to the third amended complaint is the subject of our opinion in companion Case No. G047382.

25

III

DISPOSITION

The judgment is reversed.  The appellants shall recover their costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.