[No. B216190. Second Dist., Div. Three. Apr. 5, 2011.]

Estate of PATRICIA MARGARET REDFIELD, Deceased.
NANCY HORAN, Petitioner and Appellant, v.
ROBERT DOUGLAS ROAN et al., Objectors and Respondents.

COUNSEL

Daley & Heft and Lee H. Roistacher for Petitioner and Appellant.

Robert L. Kern and Russell A. Dalton, Jr., for Objectors and Respondents.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

Nearly two years after the probate court approved their settlement of a will contest and dismissed with prejudice their petitions claiming that approximately $136,000 was part of the decedent's estate, respondents Robert Douglas Roan and Janet True objected to the co-administrators' accounting for failure to include that $136,000 in the estate's residue. Co-administrator Nancy Horan appeals from the trial court's judgment ordering her to return the $136,000 to the estate. We conclude that respondents are barred by the doctrine of res judicata from relitigating whether that money was part of the

decedent's estate. Thus, we agree with appellant that the trial court had no jurisdiction to reopen the final judgment of the probate court approving the settlement for the purpose of recharacterizing the $136,000 as part of the estate. Accordingly, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The decedent*

Patricia Margaret Redfield was admitted to the hospital on February 24, 2004, to undergo surgery. She died on March 17, 2004. Decedent was unmarried but was survived by three children, respondents Roan and True, from whom she was estranged or had a rocky relationship, and appellant Horan, with whom she was close. The relationship between the siblings is not optimal.

Approximately a week before the surgery, the decedent delivered to appellant a signed but otherwise blank withdrawal slip from one of her bank accounts. On March 15, 2004, after receiving assurances from her doctors that the decedent was improving, appellant used the slip to withdraw $136,000,[1] which amount she later deposited in her own bank account. Appellant testified the money was to be used to purchase a house.

After her mother's death, respondent True filed a petition for letters of administration indicating that decedent died intestate with an estate consisting of $135,000 in personal property and $300,000 in real property.

Appellant contested the petition and, claiming that the decedent left a will, asserted her right to be appointed either executor or administrator. The purported will, attached to appellant's opposition and to her ensuing petition for letters of administration, allocated from the residue of the decedent's estate, 40 percent to appellant, the remainder to the grand- and great-grandchildren in 10 and 5 percentages, $1 to respondent Roan, and $10,000 in trust for respondent True. In her moving papers, appellant admitted that the formalities of the will had not been met because one or both witnesses may not have been present when the decedent signed the will.

---

[1] The parties and the trial court refer to the pertinent amount of cash variously as $130,000, $136,000, $137,000, and $150,000. For simplicity, we will refer to the amount at issue as $136,000.

The probate court appointed appellant and Christine Galvez, True's daughter and the decedent's granddaughter, as co-administrators, issued orders for probate, and sent the question of appointment of an administrator to mediation.

2. *Respondents file Probate Code section 850 petitions to determine whether the $136,000 was part of the estate and the parties settle*

In February 2005, respondents each filed will contests and objections in the probate court. They contended that the will's witnesses were not present when the decedent purportedly signed it, in violation of Probate Code section 6110, subdivision (c).[2] More important, pursuant to section 850,[3] respondents petitioned to determine title to the $136,000, challenging the transfer of that money to appellant on the ground that it occurred immediately before the decedent's death while she was hospitalized and mentally and physically incompetent. *Respondents claimed the $136,000 was part of the decedent's estate.*

Meanwhile, on February 9, 2005, appellant offered to settle the matter. Appellant proposed to split her 40 percent distribution as provided for in the will by giving respondents each 12 percent, and keeping 16 percent to herself. This settlement offer was not accepted and so appellant made additional offers in March 2005 and again on April 12, 2005. The following day, appellant replied to respondent Roan's attorney's inquiry by writing to counsel for both respondents that "the residue of the estate to be divided shall be inclusive of the estate subject to probate, *which does not include the [$136,000.00] inter vivos gift to my client from the decedent.*" (Italics added.)

On April 29, 2005, appellant offered, among other things, that she and respondents receive the residue of the estate in equal shares. Respondents accepted this last offer.

3. *The probate court approves the settlement and dismisses the section 850 petitions with prejudice*

After accepting appellant's offer, respondents petitioned the probate court to approve the settlement. They requested that the court dismiss with prejudice appellant's petition to have the will probated and deny probate of the will. More important, respondents withdrew their will contests and section 850 petitions. The petition to approve the settlement described the terms, including that the residue of the estate would be distributed "as per intestate succession that is: 1/3 to Nancy Horan; 1/3 to Janet True; and 1/3 to Robert

---

[2] All further statutory references are to the Probate Code, unless otherwise noted.

[3] Section 850 allows an interested person to petition the court to determine, inter alia, title to real or personal property. (§ 850, subd. (a)(2)(C).)

Douglas Roan." The petition requested that the court order distribution according to the settlement. In a letter to his client, respondent Roan's attorney explained to Roan: *"The only thing we agreed to do in the [settlement] is drop our [section 850] petition to claim the $130,000."* (Italics added.) Respondent True objected to the settlement. True challenged appellant's assertion that the $136,000 that was the subject of True's section 850 petition was an inter vivos gift.

Co-administrator Galvez entered the fray by petitioning for instructions concerning the settlement. She sought clarification of the settlement agreement because she viewed it as ambiguous as to whether the $136,000 that respondents raised in their section 850 petitions was part of the decedent's estate. She argued the settlement allowed respondents to refile their section 850 petitions because the settlement did not require that those petitions be dismissed *with prejudice*. Galvez sought directions from the court to conduct discovery to determine the amount and location of the money, and whether it should be included in the estate residue as claimed in the section 850 petitions.

Appellant objected to Galvez's petition for instructions. She argued that the parties had reached a binding settlement agreement under which the parties agreed not to pursue the $136,000. Appellant reiterated that the money was not part of the decedent's estate because it was an inter vivos gift to appellant during the decedent's life. Appellant's attorney declared in connection with appellant's objection, that after signing the settlement, counsel for respondents each telephoned appellant's attorney to indicate that their clients were satisfied with the settlement *"and would not pursue the $136,000."* (Italics added.)

The probate court heard the petition to approve the settlement and for an order determining distribution, along with Galvez's petition for instructions. The court denied with prejudice Galvez's petition for instructions. No objections were raised. The court then denied with prejudice the petition to probate the purported will of the decedent; denied probate of the will; and approved the settlement. The court also dismissed *with prejudice* respondents' contests and section 850 petitions concerning title to the $136,000. Again, no objections were raised. The order reflecting the court's rulings, signed by attorneys for the parties and by the probate court, was entered on August 16, 2005 (the August 16, 2005 order). The record contains no appeal from that order.

### 4. *Postsettlement litigation in the superior court*

#### a. *The attorney fee dispute*

In the spring of 2006, after the order approving the settlement had become final, respondents' attorneys petitioned the probate court for attorney fees seeking court approval of their contingent fee agreements. Respondents hired new counsel and opposed the fee petitions, in part because of their claimed dissatisfaction over the settlement that did not require appellant to return the $136,000.

#### b. *The petition for distribution*

In December 2006, appellant and Galvez filed a petition for preliminary distribution, declaring that the estate's estimated value was in excess of $700,000. They proposed a distribution of the residue of the estate in equal shares of $50,000 each to appellant and respondents. Thereafter, appellant and Galvez filed a first account and report.

In March 2007, a year and seven months after the probate court's August 16, 2005 order approving the settlement was entered, respondents filed objections to the co-administrators' account, arguing that it was deficient because it omitted the $136,000, which amount they claimed appellant had improperly taken from the estate. They alleged appellant owed the estate the $136,000 because (1) during settlement negotiations, appellant concealed and misrepresented her intention to keep the money so that respondents would settle; (2) their settlement did not relieve appellant of her fiduciary obligation to pay the $136,000 back to the estate; (3) respondents' attorneys acted against the interests of their clients to obtain the majority portion of the estate's assets; and (4) appellant obtained the money through elder abuse. Respondents also alleged (5) appellant received an undue benefit from the $136,000. They requested the probate court order appellant to return the $136,000 to the estate together with interest, to remove her as co-administrator, and for an order that the settlement agreement was based on appellant's misrepresentations and hence was illusory and void.

Appellant responded that the probate court's order approving the settlement was final and barred relitigation of whether the $136,000 was part of the decedent's estate.

Trial was held over 20 days with 14 witnesses. The issues included, inter alia, the legitimacy of the will, whether the decedent intended the $136,000 to be an inter vivos gift, whether respondents' attorneys committed malpractice in deciding not to pursue the $136,000, and counsels' attorney fee requests.

The trial court issued a statement of decision ruling in particular that the will was defective, but that, although appellant knew the will was not properly executed, she did not attempt to defraud her siblings because she was forthcoming about the defects. The court then found that the decedent did not intend the $136,000 to be an inter vivos gift of all the money in her account; she intended appellant to use the money to buy a house for the decedent and appellant. The court found that the probate court's denial of Galvez's petition for instructions about the $136,000, although vague, was sufficiently clear to relieve both co-administrators of the obligation to pursue the $136,000. Finally, the court determined that the $136,000 plus interest was part of the estate. The court ordered appellant to deposit that amount into the estate or deduct it from her share. Finding that appellant knew or reasonably should have known that the $136,000 was not hers to keep and should have made full disclosure of this, or requested instructions, the court ordered appellant to be penalized in an amount equivalent to her interest in the $136,000, which sum would be distributed to respondents. Finally, the court recommended that the probate court remove appellant as co-administrator. After judgment was entered, appellant filed her timely appeal.

## DISCUSSION

*The trial court had no authority to reopen the settlement or to consider whether the $136,000 was property of the decedent's estate.*

1. *A dismissal with prejudice constitutes a final judgment on the merits and is a retraxit.*

A dismissal with prejudice following a settlement constitutes a final judgment on the merits. "A dismissal with prejudice is the modern name for a common law retraxit. [Citation.] . . . Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again." (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820 [265 Cal.Rptr. 217]; see *Estate of Cook* (1928) 205 Cal. 581, 585, 589 [271 P. 1083]; *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1330 [35 Cal.Rptr.3d 496]; accord, *Bank of America v. Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 583 [54 Cal.Rptr. 899] [probate decree settling executor's final account barred later claim concerning payment].) " 'The statutory term "with prejudice" clearly means the plaintiff's right of action is terminated *and may not be revived.*' [Citation.]" (*Torrey Pines Bank v. Superior Court, supra*, 216 Cal.App.3d at pp. 820–821, italics added.)

■ Orders of the probate court adjudicating the merits of a section 850 claim and authorizing a compromise of a contest are appealable. (§ 1300;[4] *Estate of Green* (1955) 138 Cal.App.2d 211, 214–215 [292 P.2d 651].) Although the probate court's jurisdiction under section 850 is not exclusive, a *final* judgment from the probate court is conclusive against " 'the whole world' and not just the parties to the litigation." (*Heiser v. Superior Court* (1979) 88 Cal.App.3d 276, 278 [151 Cal.Rptr. 745].)

■ We apply the principles of res judicata to resolve what issues are barred by the retraxit. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America, supra*, 133 Cal.App.4th at p. 1331.) " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897 [123 Cal.Rptr.2d 432, 51 P.3d 297], fn. omitted.)

■ Application of the doctrine of res judicata requires an affirmative answer to the following three questions: (1) Was there a final judgment on the merits? (2) Was the issue decided in the prior adjudication identical with the one presented in the subsequent litigation? (3) Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication? (*Bank of America v. Department of Mental Hygiene, supra*, 246 Cal.App.2d at p. 582.)

> 2. *Res judicata applies to bar respondents from relitigating whether the $136,000 is part of the estate and the trial court had no authority to reconsider the characterization of that money.*

All three of the res judicata questions are answered in the affirmative here. First, the probate court's August 16, 2005 order dismissing the section 850 petitions with prejudice and denying Galvez's petition for instructions with prejudice constituted a final appealable order. (§ 1300, subd. (k).) No appeal was taken from the August 16, 2005 order within the time period allowed (Cal. Rules of Court, rule 8.104(a)), with the result that it became final and

---

[4] Section 1300 reads in relevant part, "In all proceedings governed by this code, an appeal may be taken from the making of, or the refusal to make, any of the following orders: [¶] . . . [¶] (k) Adjudicating the merits of a claim made under Part 19 (commencing with Section 850) of Division 2."

unassailable (§ 7250, subd. (a);[5] cf. *Estate of Lucas* (1943) 23 Cal.2d 454, 463 [144 P.2d 340]). The August 16, 2005 order approving the settlement and dismissing with prejudice respondents' section 850 petitions constitutes a final judgment on the merits because it was a retraxit.

Second, the issue adjudicated by the probate court on respondents' section 850 petitions is identical to that which respondents raised in their subsequent objections to the accounting in the trial court namely, characterization of the $136,000 as an inter vivos gift to appellant and not part of the decedent's estate. Respondents' section 850 petitions alleged that *the $136,000 was an asset of the estate*. During settlement negotiations, appellant made clear to respondents that the $136,000 would *not* be part of the estate's residue as it was an inter vivos gift. This very issue was again raised in Galvez's petition for instructions. The parties negotiated a settlement under which respondents agreed to dismiss these very section 850 petitions in return for appellant's agreement to withdraw the will from probate and to distribute the estate's residue according to intestate succession. The probate court's August 16, 2005 approval of the settlement and dismissal with prejudice constitutes a final judgment on the merits that the $136,000 was not part of the estate. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America, supra,* 133 Cal.App.4th at pp. 1330–1331.)

This identical issue forms the basis of respondents' objections to the accounting, filed a year after the August 16, 2005 order became final. Specifically, respondents' contentions that (1) appellant perpetrated a fraud so as to keep the $136,000; (2) the settlement did not relieve appellant of her fiduciary duty to pay that money back to the estate; (3) appellant obtained the money through elder abuse; and (4) appellant received an undue benefit, all *assume that the money was part of the estate*. Such assumptions constitute nothing more than a repeat of the issue raised and finally adjudicated by the probate court's August 16, 2005 order. And as explained, respondents knew at the time their section 850 petitions were dismissed that the $136,000 was not part of the estate. Thus, these enumerated contentions are barred by the doctrine of res judicata.

We reject as unavailing the arguments of respondents on appeal that the trial court had jurisdiction because (1) it may set aside a judgment obtained by fraud; (2) respondents' objections to the accounting properly put the issue of appellant's claim of ownership of the money at issue; (3) section 11001,

---

[5] Section 7250, subdivision (a) reads in part, "(a) When a judgment or order made pursuant to the provisions of this code concerning the administration of the decedent's estate becomes *final, it releases the personal representative and the sureties from all claims of the heirs or devisees and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order.*" (Italics added.)

subdivision (b)[6] permits them to contest a misvaluation based on appellant's omission from the accounting of the $136,000. Each of these arguments is premised on the notion that the $136,000 was an asset of the estate. Yet, as explained, the probate court finally adjudicated the $136,0000 on August 16, 2005. The time to appeal the probate court's August 16, 2005 order is long since passed, and so that adjudication is res judicata.

■ Respondents' objections also constitute an inappropriate indirect, or collateral, attack on the August 16, 2005 final order approving the settlement. (8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, § 6, p. 513; *Estate of Lucas, supra,* 23 Cal.2d at pp. 463–464.) "A collateral attack is indirect: It is made, not in a proceeding brought for the specific purpose of attacking the judgment (direct attack; [citation]), but in some other proceeding having a different purpose." (8 Witkin, *supra,* Attack on Judgment in Trial Court, § 6, p. 513, italics omitted.) Respondents' objections to the accounting and dispute over counsels' requests for attorney fees are collateral to the settlement and an unavailing attack.[7] Respondents are foreclosed from raising in any form the characterization of the $136,000, whether by direct attack, i.e., appeal, or by collateral attack, i.e., by raising it in a challenge to their attorneys' fee requests or to the co-administrators' accounting.

■ Despite appellant's multiple objections to the trial court's jurisdiction based on the finality of the probate court's August 16, 2005 order, the court without explanation, nonetheless addressed the issues raised in respondents' papers. The settlement and dismissal of respondents' section 850 petitions with prejudice are res judicata. The trial court had no power to analyze the validity of the will; or to determine the decedent's intent with respect to the withdrawal slip; or to decide whether the $136,000 was part of the decedent's estate. Likewise, the trial court had no grounds upon which to determine that appellant must pay fees and costs. Therefore, the judgment appealed from must be reversed.

Finally, appellant contends that respondents must pay her legal bills pursuant to section 11003, subdivision (a). The trial court must make that determination. (See *Estate of Bonaccorsi* (1999) 69 Cal.App.4th 462, 473 [81 Cal.Rptr.2d 604].)

---

[6] Section 11001 reads in relevant part, "All matters relating to an account may be contested for cause shown, including, but not limited to: [¶] . . . [¶] (b) The value of property for purposes of distribution."

[7] Roan and True do not appeal from the trial court's ruling with respect to their attorneys' fee applications and so we do not address that portion of the judgment.

## DISPOSITION

The judgment is reversed. Appellant to recover costs on appeal.

Klein, P. J., and Kitching, J., concurred.