Filed 9/12/22  Acevedo v. CashCall CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEONARD ACEVEDO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CASHCALL, INC.,<br><br>    Defendant and Respondent. | G059671<br><br>(Super. Ct. No. 30-2012-00613984)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

James H. Cordes and Associates and James H. Cordes; Hutkin Law Firm and Allen K. Hutkin for Plaintiff and Appellant.

Manatt, Phelps & Phillips Esra, A. Hudson, Andrew L. Satenberg and Benjamin G. Shatz for Defendant and Respondent.

\*          \*          \*

# INTRODUCTION

Plaintiff Leonard Acevedo filed against his former employer CashCall, Inc. a lawsuit alleging wage and hour claims (the Acevedo action); he later amended his pleading to seek penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2699, subd. (a)) (Acevedo PAGA claim).[1] Former CashCall employee Thang Le similarly filed a lawsuit against CashCall for wage and hour claims (the Le action) and later amended to seek penalties under PAGA (the Le PAGA claim).

Le and CashCall sought and obtained court approval of a settlement agreement resolving Le's claims (the settlement agreement). The court dismissed Le's individual claims and the Le PAGA claim with prejudice.

CashCall thereafter successfully sought dismissal of the Acevedo PAGA claim on the ground it was barred by the judgment of dismissal in the Le action by operation of the doctrine of res judicata, now referred to as claim preclusion.

We affirm. The trial court did not err by finding that the claim preclusion doctrine barred the Acevedo PAGA claim because, for the reasons we explain in detail *post*, (1) that claim and the Le PAGA claim involved the same representative claim based on the same violations of wage and hour law; (2) both claims were between the same parties (CashCall and the State of California); and (3) the Le PAGA claim had already been resolved by a final judgment on the merits, having been dismissed with prejudice following the court's approval of the settlement agreement. (See *Grande v. Eisenhower Medical Center* 13 Cal.5th 313 (*Grande*).) We further conclude the trial court did not err by finding neither the manifest injustice nor the public interest exceptions to claim preclusion applicable here.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

## FACTS AND PROCEDURAL HISTORY

### I.

### THE ACEVEDO ACTION

Acevedo worked for CashCall as a loan agent between January 2012 and August 2012. In November 2012, he filed the Acevedo action. In December 2012, Acevedo sent a prefiling letter to the Labor Workforce Development Agency (LWDA) and to CashCall in which he advised of his intent to amend his complaint to add the Acevedo PAGA claim.

In February 2013, Acevedo filed the first amended complaint which added the Acevedo PAGA claim by which he sought penalties under sections 2698 and 2699 for CashCall's alleged failure to timely pay wages, overtime compensation, and waiting time penalties, and for its alleged failure to provide rest breaks. The following month, the trial court granted CashCall's petition to compel arbitration of Acevedo's individual claims and stayed the Acevedo PAGA claim pending the completion of arbitration. About 18 months later, in October 2014, the arbitrator issued a final decision in which Acevedo was awarded a total of $4,282 for unpaid overtime compensation and $29,350 in attorney fees.[2]

### II.

### THE LE ACTION

From 2011 to 2014, six other wage and hour lawsuits were filed by current and former CashCall employees who sought damages. In May 2014, Le, who had worked for CashCall until 2013, filed the Le action which included individual claims and purported class claims. In December 2014, a notice of related cases identifying the seven cases (including the Acevedo action) was filed in the Le action and served on counsel in

---

[2] In May 2015, the trial court later confirmed the arbitrator's final award in the Acevedo action and in August 2015, lifted the stay of the Acevedo PAGA claim. CashCall filed its responsive pleading to the first amended complaint in September 2015.

each of the actions, including on Acevedo's counsel. In early 2015, the trial court ordered Le's individual claims to arbitration and Le's class claims stayed.

In October 2015, Le's counsel sent a prefiling letter to LWDA and to CashCall, advising of his intent to pursue the Le PAGA claim. The prefiling letter stated that enclosed with it was Le's proposed amended pleading which contained the facts and theories that supported each of the alleged wage and hour violations.[3]

### III.

### THE SETTLEMENT AND JUDGMENT OF DISMISSAL OF THE LE ACTION

In early December 2016, Le and CashCall entered into an agreement by which CashCall, in exchange for, inter alia, the dismissal of Le's individual claims and the Le PAGA claim with prejudice, agreed to pay $337,000 as follows: (1) $50,000 payable to Le for his claims against CashCall alleged in arbitration and in his lawsuit; (2) $180,000 in attorney fees and $7,000 in costs payable to Le's counsel; and (3) $100,000 in PAGA penalties, $75,000 of which payable to LWDA and the remaining $25,000 payable to aggrieved employees. Le and CashCall filed a joint stipulation for a court order approving the settlement. On December 13, 2016, a copy of the proposed settlement and joint stipulation for an order approving that agreement was served on LWDA pursuant to section 2699, subdivision (*l*)(2).

In a minute order dated December 16, 2016, the trial court ruled: "In order to approve this settlement, the Court requires the following information: (1) an analysis

---

[3] That letter stated: "Re: NOTICE OF PAGA CLAIMS [Cal. Labor Code, §§ 2698, et. seq.) [¶] PLEASE TAKE NOTICE THAT: [¶] Pursuant to *Cal. Labor Code*, Section 2699.3 (a) (1), THANH LE, as an aggrieved employee and on behalf of all others similarly situated, hereby gives notice that CashCall, Inc. has violated and continues to violate specific provisions of the California Labor Code as listed in *Cal. Labor Code*, Section 2699.5 and as more particularly set forth in the complaint, attached hereto and incorporated fully herein by this reference, which includes the facts and theories to support each of the alleged violations. [¶] If you should have any questions regarding the foregoing, please don't hesitate to call my office at (714) 635-7888." (Some capitalization omitted.)

4

of total potential PAGA liability in light of the number of aggrieved employees and the various alleged Labor Code violations supporting PAGA penalties, (2) why $100,000 was determined to be a fair and reasonable settlement of this potential liability, (3) the total potential liability on [Le]'s individual claims (both underlying wage and hour violations and penalties), and (4) attorney billing records supporting the $180,000 attorney fee payment. In addition, the Court would require the following to occur prior to approval: (1) the filing of the Third Amended Complaint which includes a PAGA claim, (2) elimination of the requirement in Paragraph 28 of the Joint Stipulation that 'each Aggrieved Party' release any claims (even though the settlement probably will have this effect), and (3) the dismissal of the putative class action must be without prejudice and there must be submitted a declaration in compliance with California Rule of Court 3.770. Any revised settlement agreement should be served on the LWDA pursuant to Labor Code Section 2699(l)(2), with a proof of service filed with the court."

Le filed his third amended complaint adding the Le PAGA claim; a year earlier, Le had filed a motion seeking leave to file an amending pleading adding the PAGA claim, but the court stayed ruling on that motion pending completion of the arbitration of his individual claims. The parties amended the proposed settlement and release agreement and served it on LWDA on January 11, 2017.

On January 13, 2017, the trial court approved the settlement agreement as amended, directed the parties "to effectuate the settlement according to those terms," and ordered Le's individual claims and the Le PAGA claim dismissed with prejudice.[4] That same day, the parties in the Le action submitted to LWDA a copy of the court's January 13 order approving the settlement agreement and, pursuant to that agreement, submitted payment to LWDA in the amount of $75,000. The check to LWDA was cashed on January 18, 2017. LWDA did not object or make any comment about the order or the

---

[4] The court also dismissed Le's purported class action claims but without prejudice. Those claims are not relevant to the issues presented in this appeal.

5

settlement agreement in the Le action. CashCall also paid aggrieved employees, presumably including Acevedo, under the terms of the settlement agreement.

## IV.

### ACEVEDO'S MOTION TO VACATE THE LE JUDGMENT OF DISMISSAL IS DENIED

In July 2017, Acevedo filed a motion in both the Acevedo action and the Le action seeking to set aside the Le judgment of dismissal, citing Code of Civil Procedure section 473, subdivisions (b) and (d). The court denied Acevedo's motion on several grounds including that (1) Acevedo had notice of the Le action before CashCall and Le sought court approval of the settlement agreement and had not submitted any evidence showing otherwise and (2) CashCall and Le were not required to give Acevedo notice of the settlement agreement or the dismissal of the Le action.

## V.

### THE TRIAL COURT CONCLUDES THE CLAIM PRECLUSION DOCTRINE BARS THE ACEVEDO PAGA CLAIM AND DISMISSES IT

CashCall filed a motion for judgment on the pleadings in the Acevedo action on the ground Acevedo's "sole remaining cause of action, alleging a claim under [PAGA], is barred by the doctrine of res judicata, in light of the court-approved Amended Settlement and Release agreement in a separate PAGA representative action, which was thereafter dismissed in its entirety on January 13, 2017. [Citation.] The settlement and dismissal in the Le Action covers the same PAGA penalties and same aggrieved employees over the same alleged time period as those asserted by Acevedo in this action. Thus, Acevedo is barred by the doctrine of res judicata from asserting these claims on behalf of himself or the State of California, and this Motion seeks full dismissal of the action."

After the parties filed briefs on the applicability of res judicata to bar the Acevedo PAGA claim, the trial court issued an order inviting LWDA to file a brief discussing "'any items of concern raised by the parties' briefing.'" The court expressed

6

particular interest in LWDA's views on the public interest exception to res judicata. LWDA, through the Department of Labor Standards Enforcement (DLSE), submitted briefs and appeared at the hearing on the motion. LWDA asserted, inter alia, that it could not find a copy of the amended pleading referenced in Le's October 2015 prefiling letter.

Following the hearing, in September 2020, the trial court issued a lengthy and detailed ruling in which the court concluded the settlement and resulting judgment of dismissal in the Le action are entitled to res judicata effect. In a signed order, the court dismissed the Acevedo action with prejudice. Acevedo timely filed a notice of appeal from the order of dismissal.

## DISCUSSION

### I.

### PAGA OVERVIEW

"In September 2003, the Legislature enacted [PAGA] . . . . The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. [Citation.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).)

"A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).) "An aggrieved employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] Every PAGA action is 'a dispute between an employer and the state.'" (*Moniz v. Adecco USA,*

7

*Inc.* (2021) 72 Cal.App.5th 56, 74 (*Moniz*), quoting *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386 (*Iskanian*) overruled on other grounds in *Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___, 140 S.Ct. 1906, 1924.)

In a PAGA action, "the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by [LWDA]." (*Arias, supra*, 46 Cal.4th at p. 986.) Civil penalties a PAGA plaintiff may recover on the state's behalf, therefore are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. (*Iskanian, supra*, 59 Cal.4th at p. 381.) "An action under PAGA "'is fundamentally a law enforcement action'" and relief is "'designed to protect the public and not to benefit private parties.'" [Citation.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] *The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.'"* (*Moniz, supra*, 72 Cal.App.5th at p. 74, italics added.)

"Only an 'aggrieved employee' has standing to bring a civil action under PAGA. (§ 2699, subd. (a).) An 'aggrieved employee' is 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' (§ 2699, subd. (c).) Before suing, however, '[a]s a condition of suit,' the aggrieved employee 'must provide notice to the employer and the [LWDA] "of the specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation." [Citations.] If the agency elects not to investigate, or investigates without issuing a citation, the employee may then bring a PAGA action.' [Citation.] Once the procedural prerequisites are met, the aggrieved employee can bring a PAGA action." (*Moniz, supra*, 72 Cal.App.5th at p. 74.)

8

"If an aggrieved employee settles such an action, the trial court must review and approve the settlement, and the civil penalties are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees." (*Moniz, supra*, 72 Cal.App.5th at p. 64.) "[W]e determine only whether the trial court acted within its broad discretion in approving the settlement. [Citation.] We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo." (*Id.* at p. 78.)

## II.

### THE CLAIM PRECLUSION DOCTRINE AND THE GOVERNING STANDARD OF REVIEW

The issue presented in this appeal is whether the trial court erred by concluding the claim preclusion doctrine barred the Acevedo PAGA claim. The claim preclusion doctrine, formerly called res judicata, "'prohibits a second suit between the same parties on the same cause of action.'" (*Kim, supra*, 9 Cal.5th at p. 91.) "As the names suggest, claim preclusion prevents relitigation of entire claims (or 'causes of action')." (*Grande, supra*, 13 Cal.5th at p. 323.) The Supreme Court recently stated: "We have described claim preclusion as applying 'only when "a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit."'" (*Ibid.*, brackets in original, italics omitted.) "'Retraxit' describes the particular application of claim preclusion to a claim that has been dismissed with prejudice. [Citation.] A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim." (*Kim, supra*, 9 Cal.5th at p. 91.)

"Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228; see *Shuler v. Capital Agricultural Property Services, Inc.* (2020) 49 Cal.App.5th 62, 68-69 [same].)

9

## III.

### THE CLAIM PRECLUSION DOCTRINE APPLIES TO BAR THE ACEVEDO PAGA CLAIM

### A.

*Final Judgment on the Merits*

The court's signed order approving the settlement agreement and dismissing Le's individual claims and the Le PAGA claim with prejudice constituted a final judgment on the merits within the meaning of the claim preclusion doctrine. (See *Kim, supra*, 9 Cal.5th at p. 91 [judgment of dismissal is a final judgment on the merits]; (See *Estate v. Redfield* (2011) 193 Cal.App.4th 1526, 1535 [order approving the settlement and dismissing with prejudice section 850 petitions constituted a final judgment on the merits because it was a retraxit].)

Our record does not show any appeal was filed in the Le action. Neither LWDA nor Acevedo moved to intervene in the Le action.

Acevedo brought a motion to vacate the Le judgment of dismissal under Code of Civil Procedure section 473, subdivisions (b) and (d). That motion was denied. Acevedo has not argued on appeal that the trial court erred in denying that motion.

Consequently, the trial court's order approving the settlement agreement as fair and reasonable is not before this court.

In his opening brief, Acevedo does not argue that the judgment of dismissal in the Le action would not qualify as a final judgment on the merits within the meaning of the claim preclusion doctrine. Instead, without citing supporting legal authority on point, Acevedo argues the judgment of dismissal as to the Le PAGA claim in the Le action is void because Le's prefiling letter to LWDA advising of his intention to pursue the Le PAGA claim was defective. Consequently, Acevedo argues, Le was "never authorized to act as a proxy of the State in the first place." Acevedo further argues the Le judgment of dismissal therefore cannot preclude the Acevedo PAGA claim because "[a] void judgment cannot have res judicata effect." Acevedo's argument is without merit.

10

"""""A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.]"""" (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192-1193.)

We first note that the record supports the finding Le submitted a prefiling notice of intent of pursuing the Le PAGA claim in October 2015. That letter expressly referenced an enclosed draft amended complaint that addressed the facts and theories supporting CashCall's alleged wage and hour violations.

In any event, there is no dispute LWDA received notice Le intended to pursue a PAGA claim in 2015. It also received notice in December 2016 of Le and CashCall's proposed settlement of, inter alia, the Le PAGA claim when it received a copy of the original proposed settlement and release agreement itself. In January 2017, LWDA was served with a copy of the court approved settlement agreement as amended as well as the court's order dismissing Le's individual claims and the Le PAGA claim with prejudice. Not once did LWDA raise any concern much less objection to the assertion, settlement, or dismissal of the Le PAGA claim in the Le action. Indeed, LWDA received a payment in accordance with the settlement agreement and cashed it that same month. It was not until the court invited LWDA to submit a brief regarding claim preclusion and granted DLSE leave to intervene in the Acevedo action more than two years after the court dismissed the Le PAGA claim with prejudice that LWDA argued that prefiling requirements are jurisdictional.

As expressed by the trial court in its ruling, neither Acevedo nor LWDA cite legal authority which supports the argument that any possible defects in Le's October 2015 prefiling notice letter to LWDA, such as the possible failure to have enclosed his

11

proposed third amended complaint with that letter, deprived the trial court of fundamental jurisdiction over the subject matter or the parties.

We agree with the trial court that any error by the trial court in approving the settlement agreement caused by a defective prefiling notice is procedural, not jurisdictional. "A judgment is void if the court lacked jurisdiction over the subject matter or parties, for example, if the defendant was not validly served with summons. [Citation.] In contrast, a judgment is valid but voidable if it is the result of the court's failure to follow proper procedure." (*Johnson v. E-Z Ins. Brokerage, Inc.* (2009) 175 Cal.App.4th 86, 98; see *Lee v. An* (2008) 168 Cal.App.4th 558, 566 [where court had jurisdiction over the party and questions presented, but acted in excess of its defined power by failing to follow procedures of giving notice before striking the party's answer and entering its default, the subsequent default judgment was voidable not void].)

We further agree with the trial court that LWDA, by its actions, forfeited any argument Le failed to exhaust administrative remedies.

B.

*Same Claims*

In the trial court's ruling, the court stated: "It is undisputed for purposes of this analysis that the release in Le covers virtually all of the PAGA claims advanced in Acevedo—as to time, as to the definition of aggrieved employees, and as to underlying substantive Labor Code violations." Acevedo does not challenge this statement in the court's ruling and the record supports it.

The amended settlement agreement and release provides in relevant part: "Upon the approval by the Court of this Settlement, Plaintiff, for the Covered Period, fully releases with prejudice and forever discharges CashCall and its respective present and former officers, directors, owners, employees, shareholders, agents, trustees, representatives, attorneys, insurers, parent companies, subsidiaries, divisions, affiliates, predecessors, successors, assigns, including any individual or entity that could be jointly

12

liable with CashCall (the foregoing are collectively referred to hereafter as the 'Releasees') from the Covered Claims, and from any other expenses, penalties, interest, debts, liabilities, demands, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature that were asserted or could have been asserted pursuant to Labor Code § 2699 based on the facts alleged in the Lawsuit. [¶] For the avoidance of doubt, this release applies only to claims related to CashCall, Inc., and does not release any potential alleged claim that arose from any Aggrieved Employee's employment with any other entity. Furthermore, this release does not include any Aggrieved Employee's individual claim for unpaid overtime wages, meal and rest period premiums, and relative derivative claims; this settlement covers only PAGA penalties."

The amended settlement and release agreement provides "'Covered Period' shall mean the period from January 1, 2012 through the Effective Date of this Agreement." It further provides: "'Covered Claims' means any and all claim for PAGA penalties for Aggrieved Employees as they relate to unpaid overtime wages, inadequate meal and rest periods, and related derivative claims, which include, but are not limited to, claims asserted under Labor Code sections 201-203, 204, 210, 216, 221-223, 225.5, 226, 226.3, 226.7, 350, 351, 400-410, 510, 512, 516, 558, 1174, 1194, and the related California Wage Orders. 'Covered Claims' does not include any Aggrieved Employee's individual claim for unpaid overtime wages, meal and rest period premiums, and relative derivative claims; this settlement covers only PAGA penalties."

Acevedo's operative complaint[5] contained a single representative action for the recovery of penalties under PAGA which provided: "As set forth in greater detail

---

[5] In December 2017, Acevedo filed an amended pleading entitled "Amended Consolidated Complaint for: (1) Civil Penalties Under the Private Attorneys General Act (Labor Code §§ 2698 et seq.)" which alleged violations of the Labor Code and the California Code of Regulations, Title 8, section 11000 et seq.

herein, Defendants engaged in conduct and adopted policies that were and continue to be in violation of the California Labor Code and applicable law. Plaintiffs, on behalf of themselves and all other aggrieved employees, bring this PAGA action and seek penalties for violations of the California Labor Code, including without limitation sections 201, 202, 203, 204, 210, 216, 225.5, 226, 226.7, 510, 512, 558, 1194, 2698 *et seq*., applicable IWC California Wage Orders and California Code of Regulations, Title 8, section 11000 *et seq.*"

Acevedo does not point to any claim raised in his amended consolidated complaint that is not included in the settlement agreement in the Le action.

In his opening brief, Acevedo argues that claim preclusion does not apply because Le's third amended complaint, as opposed to the settlement agreement, did "not cover all of Acevedo's claims and all of Acevedo's time period."

In *Moniz, supra*, 72 Cal.App.5th at page 83, the appellate court rejected the plaintiff's argument that a settlement release was invalid because it purportedly released PAGA claims not listed in the defendant's PAGA notice. The court explained: "Claim preclusion prevents relitigation of the same 'cause of action,' defined under our primary rights doctrine as 'the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.' [Citation.] Claim preclusion extends to claims that were brought or could have been brought. [Citation.] Taken together, PAGA's statutory scheme and the principles of preclusion allow, or 'authorize,' a PAGA plaintiff to bind the state to a judgment through litigation that could extinguish PAGA claims that were not specifically listed in the PAGA notice where those claims involve the same primary right litigated. Because a PAGA plaintiff is authorized to settle a PAGA representative action with court approval (§ 2699, (l)(2)), it logically follows that he or she is authorized to bind the state to a settlement releasing claims commensurate with those that would be barred by res judicata

14

in a subsequent suit had the settling suit been litigated to judgment by the state. (Fn. omitted)."

In their respective pleadings, Acevedo and Le each alleged violations of wage and hour laws seeking damages for unpaid wages and waiting time penalties and for failure to provide rest breaks. Claim preclusion extends to claims Le brought or could have brought which involve the same primary rights asserted by Le in the Le action. That Le did not specifically plead violation of some statutes that were pleaded by Acevedo does not, therefore, defeat application of the claim preclusion doctrine.

Furthermore, in *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 541-542 (*Amaro*), a panel of this court rejected the argument that a plaintiff can only release class members' PAGA claims within the one-year limitations period of his or her own PAGA claim, holding: "Nothing in the statute prohibits [a plaintiff] from releasing PAGA claims outside the limitations period of her own claim. Nor is this practice contrary to PAGA's purposes."

The *Amaro* court explained: "'In civil cases, the statute of limitations is not jurisdictional but merely serves a procedural function and constitutes an affirmative defense that is waived unless pleaded and proved.' [Citations.] If the Legislature had intended to make the limitations period for PAGA jurisdictional rather than an affirmative defense, it would have said so. [Citation.] Since it did not, we must presume the general rule applies. As such, it was within [the employer]'s discretion to waive its statute of limitations defense so [the plaintiff] could release class members' PAGA claims dating back to December 2010. And even if PAGA's statute of limitations were jurisdictional, that would not bar the court from approving a release of claims outside the limitations period.

"Further, nothing in the purpose of the statute convinces us that plaintiffs should be barred from agreeing to such a release of PAGA claims. PAGA ""is fundamentally a law enforcement action,'" not one for the benefit of private parties.'

15

[Citation.] 'The Legislature's sole purpose in enacting PAGA was "to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]." [Citations.] Accordingly, a PAGA claim is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government.' [Citation.] The 'civil penalties recovered on the state's behalf are intended to "remediate present violations and deter future ones," *not* to redress employees' injuries.'" (*Amaro, supra*, 69 Cal.App.5th at pp. 541-542.)

The *Amaro* court held that while a named plaintiff may release PAGA claims beyond the one-year limitations period of his or her claim, "[a] trial court may still refuse to approve such a release if it is unfair given the circumstances of the case." (*Amaro, supra*, 69 Cal.App.5th at p. 543.) Here, the trial court concluded the settlement agreement as amended should be approved.

C.

*Same Parties or Privies*

Acevedo also argues the claim preclusion doctrine did not apply because the Le action and the Acevedo action did not involve the same parties. As discussed *ante*, in PAGA cases "[t]he government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." (*Iskanian, supra*, 59 Cal.4th at p. 382.) Therefore, Acevedo and Le constitute the same "plaintiff" for PAGA purposes, because "[i]n bringing [a PAGA] action, the aggrieved employee acts as the proxy or agent of state labor law enforcement agencies, representing the same legal right and interest as those agencies." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003; *Arias, supra*, 46 Cal.4th at p. 986 [a PAGA judgment binds not only that employee-plaintiff but also the State].)

Acevedo recycles his argument that Le was never authorized to act as the State's proxy because his prefiling letter to LWDA was insufficient. Therefore, he contends LWDA was not the real party in interest in the Le action with respect to the Le

16

PAGA claim. For the same reasons discussed *ante*, LWDA was given notice of the Le PAGA claim.[6] The judgment of dismissal in Le establishes that Le was acting as the State's proxy in releasing the Le PAGA claim. For the reasons we discussed *ante*, that judgment is a final judgment on the merits, is not void, and establishes that, with regard to the parties' respective PAGA representative claims, both the Acevedo action and the Le action involve the same parties: CashCall and the State.

III.

THE RECORD DOES NOT SHOW AN EXCEPTION TO CLAIM PRECLUSION APPLIES

Acevedo contends the manifest injustice exception and the public interest exception to the claim preclusion doctrine applied here and the trial court erred by finding otherwise. We disagree.

It is rare for an exception to the claim preclusion doctrine to apply. (See *F.E.V. v. City of Anaheim* (2017) 15 Cal.App.5th 462, 465 ["In rare circumstances, a final judgment may be denied claim preclusive effect when to do so would result in manifest injustice"]; *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 259 ["The public interest exception is an extremely narrow one; we emphasize that it is the exception, not the rule, and is only to be applied in exceptional circumstances"]; see *also Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1562 [describing determination of the manifest injustice exception to res judicata as an "equitable and discretionary" act].)

---

[6] In any event, even if Le had not included a copy of the proposed third amended complaint with his prefiling letter, LWDA forfeited any challenge to Le's proxy status by failing to respond not only to that prefiling letter in October 2015, but also by failing to respond to, much less challenge, Le and CashCall's original settlement and release agreement or the settlement agreement approved by the trial court. Finally, not only did LWDA receive and cash the settlement payment it received from CashCall, our record shows that LWDA did not raise any concern about that settlement until after the trial court invited briefing from the DLSE on the claim preclusion issue in the Acevedo action years later.

And such an exception only applies when the issue presented is one of law and not of fact. (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64 ["'[W]hen the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed'"]; see *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 622, ["'"when the issue is a question of law rather than of fact, the prior determination is not conclusive . . . if injustice would result"'"]; see also *People v. Barragan* (2004) 32 Cal.4th 236, 256 ["We have also recognized that public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact"].)

In his opening brief, Acevedo reiterates the same arguments he made to challenge application of the claim preclusion doctrine in the first place to challenge the court's finding no exception to that doctrine applied: "The trial court found that errors in approving the Thanh Le settlement involved questions of fact, and that because there were no legal errors, exceptions to res judicata do not apply. [Citation.] This was error. The Thanh Le judgment is based on errors of law that render it void as to PAGA claims. As discussed above, Thanh Le was not authorized and lacked standing to bring, let alone settle, PAGA claims as a matter of law. The Thanh Le court lacked jurisdiction and the power to delegate the LWDA's duty to pursue Labor Code violation penalties, so its judgment is void as to those claims. Due to these legal errors, exceptions to res judicata apply."

For the reasons we have discussed *ante*, the judgment in the Le action is not void and LWDA forfeited any argument Le failed to exhaust administrative remedies. Therefore, no exception to claim preclusion applies on those grounds.

Acevedo also argues that barring him from pursuing the Acevedo PAGA claim will result in an injustice because "CashCall will have successfully engineered a collusive reverse auction and escaped penalty for failing to comply with California's

18

Labor Laws. The Legislature's PAGA law will have failed to enhance the State's ability to enforce labor laws, and the State will potentially be deprived of millions of dollars in revenue." In its ruling dismissing the Acevedo action, the trial court addressed the manifest injustice exception and rejected its application: "A 'manifest injustice' identified by both Plaintiffs and the LWDA is the allegedly collusive nature of the Le settlement. [Citation.] The Court agrees that on the record before it, the Le settlement bears the hallmarks of an improper reverse auction. But to determine whether the settlement was so collusive as to work a manifest injustice, the Court would have to resolve questions of fact. Because the manifest injustice exception applies only to questions of law, it is inapplicable on this basis."

The trial court similarly addressed Acevedo's argument in the context of the public interest exception: "The public interest identified by Plaintiffs is an interest in avoiding 'sweetheart deals that attempt to insulate genuine violators . . . by way of res judicata or collateral estoppel.' [Citation.] Again, however, whether Le agreed to a 'sweetheart deal' is a question of fact, not law."

In his opening brief, Acevedo acknowledges an exception to claim preclusion may be made where the issue presented is a question of law, not fact. He does not address, much less challenge, the trial court's determination that application of an exception to claim preclusion based on a reverse auction theory necessarily presents questions of fact. Acevedo has otherwise failed to show the application of the claim preclusion doctrine here would result in such a manifest injustice or work against the public interest so as to trigger a rare exception to that doctrine.

19

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.